UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRAILER BRIDGE, INC.                                   CIVIL ACTION

VERSUS                                                 NO. 22-5358

LOUISIANA INTERNATIONAL MARINE, LLC                    SECTION: "G"(5)

## ORDER AND REASONS

Before the Court is Defendant Louisiana International Marine, LLC's ("Defendant") Motion for Summary Judgment.[1] Defendant seeks summary judgment in its favor recognizing the validity of its maritime liens for towage and related necessaries against two barges owned by Plaintiff Trailer Bridge, Inc. ("Plaintiff"), namely the ATLANTA BRIDGE and MEMPHIS BRIDGE, *in rem*, for the total principal amount of $1,917,785.72.[2] In opposition, Plaintiff contends that facts remain in dispute as to whether Defendant has a valid maritime lien.[3] Considering the motion, the memorandum in support, the reply memorandum, the record, and the applicable law, the Court denies the motion.

## I. Background

Plaintiff owned two deck barges, ATLANTA BRIDGE and MEMPHIS BRIDGE.[4] On August 4, 2020, Plaintiff and Work Cat Florida, LLC ("Work Cat") executed a BIMCO Standard

---

[1] Rec. Doc. 33.

[2] *Id.*

[3] Rec. Doc. 38.

[4] Rec. Doc. 1 at 2.

Barge Charter Party Agreement ("the Trailer Bridge/Work Cat charter agreement") for the time charter of the barges to Work Cat.[5] The charter agreement allegedly contained a no-lien and indemnity provision.[6] The Complaint alleges that a copy of the charter agreement was maintained in the line lockers of the ATLANTA BRIDGE and MEMPHIS BRIDGE and was available upon request.[7]

On November 12, 2020, Work Cat and Defendant entered into two identical BIMCO Supplytime 2005-time charter party agreements for certain offshore service vessels (collectively "the LIM/Work Cat charter agreements"), namely the LA COMMANDER and the LA INVADER owned by Defendant.[8]

Beginning in January 2021, Work Cat, pursuant to the LIM/Work Cat charter agreements, utilized the services of the LA COMMANDER and the LA INVADER to perform various services including towage of the chartered barges owned by Plaintiff.[9] According to the Complaint, Plaintiff was not a part of, did not consent to, and lacked knowledge of these arrangements.[10]

Defendant regularly invoiced Work Cat for payment for the services rendered from January 16, 2021 through June 18, 2021.[11] On May 18, 2021, Work Cat filed for Chapter 11

---

[5] *Id.* at 3.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* at 4.

[10] *Id.*

[11] *Id.*

Bankruptcy in the United States Bankruptcy Court for the Middle District of Florida – Tampa Division.[12] On June 22, 2021, Work Cat converted its bankruptcy proceedings from Chapter 11 to Chapter 7.[13]

On May 25, 2021, Defendant filed a proof of claim in the Work Cat bankruptcy proceedings for the unpaid invoices to Work Cat totaling $1,364,214.17.[14] Defendant alleged that this amount was for "towage services and supplies" rendered to Work Cat for the use of the LA COMMANDER and LA INVADER.[15]

On June 4, 2021, Defendant filed two claims of lien with the National Vessel Documentation Center ("NVDC") against the ATLANTA BRIDGE for $1,264,214.16 and against the MEMPHIS BRIDGE for $1,362,214.16.[16] Both claims of lien allege a maritime lien for necessaries for towage against the respective barges.[17]

On August 1, 2022 and November 28, 2022, Plaintiff entered into Purchase and Sale Agreements to sell the MEMPHIS BRIDGE and the ATLANTA BRIDGE.[18] Both agreements require Plaintiff to indemnify and defend the purchasers.[19] On November 30, 2022, Defendant

---

[12] *Id.* at 5.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 6.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 7.

[19] *Id.*

sent a Notice of Lien and Demand for Payment to the purchaser of the MEMPHIS BRIDGE.[20] On December 16, 2022, the purchaser made demand to Plaintiff seeking defense and indemnity against the claim asserted by Defendant.[21]

On December 20, 2022, Plaintiff filed a complaint in this Court against Defendant seeking declaration that the claims of lien asserted by Defendant are invalid.[22] On January 23, 2023, Defendant filed an answer and counterclaim against Plaintiff seeking recognition of the liens and judgment *in rem* against the barges.[23]

On January 8, 2024, Defendant filed the instant motion.[24] On March 26, 2024, Plaintiff filed an opposition to the motion.[25] On April 1, 2024, Defendant filed a reply memorandum in further support of its motion.[26]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion*

Defendant argues that the summary judgment evidence plainly demonstrates that it is entitled to enforce its maritime liens pursuant to the Commercial Instruments and Maritime Liens Act ("CIMLA").[27] Defendant argues that the liens against the ATLANTA BRIDGE and

---

[20] *Id.*

[21] *Id.* at 8.

[22] *Id.* at 11.

[23] Rec. Doc. 5.

[24] Rec. Doc. 33.

[25] Rec. Doc. 38.

[26] Rec. Doc. 39.

[27] Rec. Doc. 33 at 1.

MEMPHIS BRIDGE are enforceable because (1) the liens arise out of towing services and fuel bunkers, which are "necessaries"; (2) the necessaries were provided to the ATLANTA BRIDGE and the MEMPHIS BRIDGE, which are vessels; and (3) Work Cat, as a charterer, is a "person authorized by the owner" to procure the necessaries that Defendant provided.[28]

First, Defendant contends that it is undisputed that its tugboats towed Plaintiff's barges.[29] Defendant submits that Plaintiff has not contested the amounts reflected in the invoices for towage services.[30] Defendant argues that the towage services and fuel provided to the vessels constitute "necessaries" pursuant to the express provisions of the CIMLA, which entitles Defendant to a lien in the amount of $1,556,414.16, reflected in the unpaid invoices.[31] Defendant contends that the fuel bunkers purchased for its tugs were indispensable to the towage services provided to the barges.[32] Defendant asserts that the towage and fuel constitute "goods and services that [were] useful to" the barges.[33] Defendant submits that the LIM/Work Cat charter agreement stated that Work Cat "shall provide and pay for all fuel [while LIM's tugs are on hire]…"[34] Defendant argues that courts have deemed a tug and a barge to be a "single vessel" when a tug is performing towage services for the barge in similar circumstances.[35] Defendant

---

[28] Rec. Doc. 33-2 at 6.

[29] *Id.* at 7.

[30] *Id.* at 8.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 9.

[35] *Id.*

avers that it is also entitled to the $361,381.56 in expenses for the fuel purchased in connection with its towage services.[36]

Next, Defendant argues that Work Cat is a "person authorized" by Plaintiff to procure necessaries for the barges.[37] Defendant contends that Plaintiff has acknowledged that Work Cat is a charterer of the barges pursuant to the Trailer Bridge/Work Cat charter agreement.[38] Defendant avers that under the CIMLA, an "officer or an agent appointed by the owner" is a person "presumed to have authority to procure necessaries for a vessel."[39] Defendant asserts that because it provided necessaries on Work Cat's order, Defendant has maritime liens on the barges pursuant to 46 U.S.C. § 31342(a)(1).[40]

Third, Defendant argues that it did not waive its right to assert the liens.[41] Defendant contends that Plaintiff cannot establish waiver.[42] Relying on *Gulf Trading  Transp. Co. v. Vessel Hoegh Shield*,[43] Defendant contends that while it invoiced Work Cat for the towage services, this only shows that it "attempt[ed] to receive the payment from the charterer first" and does not establish that Defendant "never intended to rely on the credit of" the barges.[44] Defendant asserts

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at 10.

[41] *Id.*

[42] *Id.* at 12.

[43] 658 F.2d 363 (5th Cir. 1981).

[44] Rec. Doc. 33-2 at 12.

that its proof of claim filed in the Work Cat bankruptcy proceeding notes that Defendant's claim was based upon a maritime lien on the vessels for necessaries under the CIMLA, further demonstrating that Defendant relied upon the credit of the vessels.[45]

Fourth, Defendant argues that the no-lien clause does not preclude it from asserting the liens.[46] Defendant contends that it did not have actual knowledge of the charter agreement's no-lien clause, and thus, the no-lien clause does not preclude it from asserting the liens.[47] Defendant contends that Plaintiff has not provided any evidence of "affirmative communication" of the no-lien clause to Defendant.[48] Defendant avers that it does not have a duty to scour the barges for a binder that may or may not contain a copy of the charter agreement as suggested by Plaintiff.[49]

Fifth, Defendant argues that its notices of claims of lien comply with the CIMLA's requirements and do not invalidate Defendant's liens against the barges.[50] Defendant contends that any supposed deficiency in a notice of claim of lien has no bearing on the substantive validity of a maritime lien under the CIMLA because maritime liens arise by operation of law "when the debt arises," not by filing a notice of claim of lien.[51] Defendant avers that even if it was required to file a notice of claim of lien, its notices comport with the provisions of 46 U.S.C.

---

[45] *Id.* at 13.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 14.

[49] *Id.* at 15.

[50] *Id.*

[51] *Id.* at 16.

§ 31343(a).[52] Defendant asserts that the notices are valid and do not preclude Defendant from asserting liens against the barges.[53]

Sixth, Defendant argues that collateral estoppel precludes Plaintiff from challenging the validity and enforceability of the liens in this litigation.[54] Defendant contends that Plaintiff repeatedly acknowledged the validity of Defendant's liens in the Work Cat bankruptcy litigation.[55] Defendant asserts that both Plaintiff and Defendant were parties to the Work Cat bankruptcy litigation as creditors, and Plaintiff argued that the existence of Defendant's maritime liens constituted grounds for the bankruptcy court to lift the automatic stay against the creditors.[56] Defendant avers that this Court should apply the doctrine of collateral estoppel and preclude Plaintiff from contradicting its representations to the bankruptcy court.[57]

Seventh, Defendant argues that this Court should award it attorney's fees pursuant to 46 U.S.C. § 31343(c)(2).[58] Defendant contends that the Complaint seeks to invalidate the liens Defendant has asserted against the vessels, which has forced Defendant to defend the matter and incur attorney's fees and litigation costs.[59] Defendant avers that in the event this Court

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* at 17.

[57] *Id.* at 19.

[58] *Id.*

[59] *Id.*

recognizes Defendant's liens and dismisses the Complaint, this Court should award attorney's fees as the prevailing party pursuant to 46 U.S.C. § 31343(c)(2).[60]

### B.   *Plaintiff's Arguments in Opposition to the Motion*

First, Plaintiff argues that additional discovery remains outstanding, which is necessary to develop all material facts.[61] Plaintiff contends that the towage services performed by Defendant were done on behalf of Work Cat.[62] Plaintiff asserts that Defendant was hired to perform tasks "as directed" by Work Cat, and the invoices for said tasks were not itemized.[63] Plaintiff contends that this information does not establish that "necessaries" were rendered.[64] Plaintiff argues that there is no testimony that the services were "for" the barges.[65]

Second, Plaintiff asserts that Defendant has failed to produce any evidence to establish that the barges requested towage, or that it was necessary for the barges to be towed to effectuate their function—to stay afloat.[66] Plaintiff argues that the barges received no use or benefit from the towage services.[67] Plaintiff contends that it did not receive a "direct" benefit from Defendant's services.[68]

---

[60] *Id.*

[61] Rec. Doc. 38 at 1.

[62] *Id.* at 5.

[63] *Id.* at 6.

[64] *Id.* at 7.

[65] *Id.*

[66] *Id.* at 12.

[67] *Id.*

[68] *Id.* at 13.

Third, Plaintiff argues that Defendant does not have a valid claim for the fuel consumed by Defendant's tugboats.[69] Plaintiff avers that the Court should disregard the out-of-circuit dicta stating that a barge and a tugboat are a single vessel, as this directly conflicts with binding Fifth Circuit precedent.[70] Plaintiff contends that courts in the Fifth Circuit have found that only the vessel that consumed the fuel may be exposed to a maritime lien.[71] Plaintiff states that it is undisputed that barges do not have engines, nor do they consume fuel.[72] Plaintiff asserts that a non-party corporation provided the fuel to Defendant's tugboats, and said corporation later filed a lien against Defendant's tugboats.[73] Plaintiff avers that Defendant paid the non-party corporation for the fuel, and a maritime lien cannot be subrogated.[74]

Fourth, Plaintiff argues that Work Cat did not have authority to bind the vessel.[75] Plaintiff contends that the Trailer Bridge/Work Cat charter agreement contained several no-lien clauses that prohibited Work Cat from binding the vessel.[76] Plaintiff avers that Defendant has not established that Work Cat had authority to act as Plaintiff's agent.[77] Plaintiff asserts that a presumption that a charterer has authority to bind a vessel is not conclusive and can be rebutted

---

[69] *Id.*

[70] *Id.*

[71] *Id.* at 14.

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.* at 15.

[76] *Id.*

[77] *Id.* at 16.

by showing that a dispute of facts exists as to whether the purported provider of necessaries had knowledge of a no-lien clause that prevents the ordering entity from binding the vessel.[78] Plaintiff asserts that a copy of the Trailer Bridge/Work Cat charter agreement was maintained on the barge, and Defendant testified that it possessed the binders which contained the charter agreement.[79] Plaintiff contends that a genuine issue of material fact remains in dispute as to the knowledge of the terms of the Trailer Bridge/Work Cat charter agreement.[80]

Fifth, Plaintiff argues that Defendant did not rely on the credit of the barges.[81] Plaintiff contends that Defendant's corporate representative testified that Defendant did not extend any credit to the barges.[82] Plaintiff asserts that every invoice prepared by Defendant was addressed to Work Cat.[83] Plaintiff avers that Defendant has not established that it relied upon the credit of the barges.[84]

Sixth, Plaintiff argues that Defendant's notices of claim of lien filed with the NVDC are invalid.[85] Plaintiff contends that Defendant provides no indication of which tugboat allegedly towed which barge or when the towage services were provided.[86] Plaintiff avers that the notices

---

[78] *Id.*

[79] *Id.*

[80] *Id.* at 17.

[81] *Id.*

[82] *Id.* at 18.

[83] *Id.* at 19.

[84] *Id.*

[85] *Id.* at 20.

[86] *Id.* at 21.

of claims of lien are comingled and erroneously cumulate all outstanding invoiced amounts to both barges.[87] Plaintiff contends that Defendant's corporate representative stated that the "total amount of lien" as reflected on the notices of claims of lien is incorrect and inflated.[88]

Seventh, Plaintiff argues that Defendant has failed to establish the actual value of its claims or establish that such is reasonable.[89] Plaintiff contends that Defendant has not presented any evidence that would justify an award in favor of the day-rate payment contracted with Work Cat.[90] Plaintiff avers that Defendant has not provided evidence of the actual services rendered, and thus has not met its burden of proof regarding the amounts of the claims.[91] Plaintiff asserts that Defendant has not proven that the requested values are reasonable.[92]

Eighth, Plaintiff argues that collateral estoppel is inapplicable.[93] Plaintiff contends that the Tampa Bankruptcy Court did not hold that Defendant had a valid maritime lien; Plaintiff asserts that the court expressly reversed the issues presented in the instant lawsuit and did not consider them.[94] Plaintiff avers that there has been no disposition as to the issues presented in this lawsuit.[95]

---

[87] *Id.*

[88] *Id.* at 22.

[89] *Id.* at 23.

[90] *Id.*

[91] *Id.* at 23–24.

[92] *Id.* at 24.

[93] *Id.*

[94] *Id.*

[95] *Id.* at 25.

Finally, Plaintiff argues that Defendant is not entitled to attorney's fees.[96] Plaintiff contends that 46 U.S.C. § 31343(c)(2) declares that if a court finds that the vessel is not subject to a lien claimed, it may then award attorney's fees to the prevailing party.[97] Plaintiff avers that the statute does not provide an award of attorney's fees simply because the vessel is subject to a lien; rather, the statue is designed to provide a penalty to persons for wrongfully filing erroneous claims of lien.[98]

### C.   *Defendant's Arguments in Further Support of the Motion*

First, Defendant argues that sufficient time for discovery has been provided.[99] Defendant contends that Plaintiff has not provided an affidavit or declaration containing specified reasons as to why it cannot present facts to justify its opposition as required by Federal Rule of Civil Procedure 56(d).[100] Defendant asserts that this Court has granted a trial continuance at Plaintiff's request because of outstanding discovery, and the discovery deadline has been extended at Plaintiff's request.[101] Defendant avers that Plaintiff has been granted enough time to develop facts necessary to its opposition.[102]

---

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] Rec. Doc. 39 at 1.

[100] *Id.*

[101] *Id.* at 2.

[102] *Id.*

Next, Defendant argues that it has a valid maritime lien on the barges.[103] Defendant contends that the towage services were "necessary" for the barges.[104] Defendant avers that it towed the barges, which Work Cat used for liner services.[105] Defendant asserts that whether it provided towage as a "necessary" is a question of law, and in turn, the lien automatically arises.[106] Defendant argues that the reasonable value of services includes the daily rate plus fuel.[107]

Third, Defendant argues that Work Cat, as a charterer, had presumptive, statutory authority to bind the vessel.[108] Defendant contends that Plaintiff bears the burden of rebutting said presumption.[109] Defendant asserts that a no-lien clause is only effective if the supplier has actual knowledge of it.[110] Defendant avers that it has offered competent evidence that it had no actual knowledge of a no-lien clause, and Plaintiff has raised no genuine issues of material fact in response.[111]

---

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] *Id.* at 3.

[107] *Id.* at 6.

[108] *Id.* at 7.

[109] *Id.*

[110] *Id.* at 8.

[111] *Id.*

Fourth, Defendant argues that it relied on the credit of the barges and did not waive its rights to assert a lien against the vessels.[112] Defendant contends that Plaintiff has not carried its "heavy burden" of proving that Defendant "deliberately intended" to waive its right to assert a maritime lien.[113] Defendant asserts that a full reading of its corporate representative's transcript reveals that he did not understand the meaning of "extending credit to the barges."[114]

Fifth, Defendant argues that its notices of liens filed with the NVDC have since been released by Defendant as consideration according to an escrow agreement.[115] Defendant contends that the relief requested by Plaintiff, that this Court strike the notices of liens, is now moot.[116] Lastly, Defendant asserts that it is entitled to attorney's fees. Defendant contends that the statute provides that the Court may award attorney's fees to the prevailing party.[117] Defendant argues that the Court should reject Plaintiff's argument.[118]

## III. Legal Standard

### A.    *Summary Judgment*

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[112] *Id.* at 9.

[113] *Id.*

[114] *Id.*

[115] *Id.* at 10.

[116] *Id.*

[117] *Id.*

[118] *Id.*

a matter of law."[119] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[120] All reasonable inferences are drawn in favor of the nonmoving party.[121] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[122] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[123] The nonmoving party may not rest upon the pleadings.[124] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[125]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[126] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's

---

[119] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[120] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[121] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[122] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[123] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[124] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[125] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[126] *Celotex Corp.*, 477 U.S. at 323.

claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[127] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[128] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[129]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[130] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[131]

## B.    Maritime Lien

"The purpose of maritime liens is 'to enable a vessel to obtain supplies or repairs necessary to her continued operation by giving a temporary underlying pledge of the vessel which will hold until payment can be made or more formal security given.'"[132] Maritime liens may arise only by operation of law, rather than by agreement of the parties.[133]

---

[127] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[128] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[129] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[130] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[131] *Morris*, 144 F.3d at 380.

[132] *Lake Charles Stevedores, Inc. v. PROFESSOR VLADIMIR POPOV MV*, 199 F.3d 220, 223 (5th Cir.1999) (quoting *S. Coal & Coke Co. v. F. Grauds Kugniecibas ("The Everosa")*, 93 F.2d 732, 735 (1st

In the United States, maritime liens are largely governed by the Commercial Instruments and Maritime Liens Act ("CIMLA"), which in relevant part provides:

(a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
    (1) has a maritime lien on the vessel;
    (2) may bring a civil action in rem to enforce the lien; and
    (3) is not required to allege or prove in the action that credit was given to the vessel.
(b) This section does not apply to a public vessel.[134]

The CIMLA defines "necessaries" as including "repairs, supplies, towage, and the use of a dry dock or marine railway,"[135] and also provides that:

(a) The following persons are presumed to have authority to procure necessaries for a vessel:
    (1) the owner;
    (2) the master;
    (3) a person entrusted with the management of the vessel at the port of supply; or
    (4) an officer or agent appointed by—
        (A) the owner;
        (B) a charterer;
        (C) an owner pro hac vice;
        (D) an agreed buyer in possession of the vessel.[136]

---

Cir.1937)).

[133] *Vestoil, Ltd. v. M/V M Pioneer*, 148 Fed. App'x. 898, 900 (11th Cir. 2005); see also *Bird of Paradise*, 72 U.S. 545, 555 (1866); *Newell v. Norton*, 70 U.S. 257, 262 (1865) ("Maritime liens are not established by the agreement of the parties....They are consequences attached by law to certain contracts, and are independent of any agreement between the parties that such liens shall exist. They, too, are stricti juris."); *Marine Oil Trading Ltd. v. M/T PAROS*, 287 F.Supp.2d 638, 644 (E.D.Va. 2003) ("While a maritime lien does arise by operation of law rather than by agreement between the parties, there are a number of reasons for including contractual language alerting the parties to the existence of a lien on the ship. This language does not, however, actually give rise to the lien.").

[134] 46 U.S.C. § 31342.

[135] 46 U.S.C. § 31301(4).

[136] 46 U.S.C. § 31341(a).

Although the supplier of necessaries may in certain circumstances be entitled to a maritime lien, such liens are not automatic, but depend on the relationships between the various parties involved.[137]

## IV. Analysis

### A.   Outstanding Discovery

Plaintiff argues that additional discovery is necessary to develop material facts and this Court should deny the instant motion as premature.[138] Federal Rule of Civil Procedure 56 does not require that any discovery take place before summary judgment can be granted; if a party cannot adequately defend such a motion, Federal Rule of Civil Procedure 56(d) is his remedy.[139] The Fifth Circuit has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.[140]

Federal Rule of Civil Procedure 56(d) provides:

---

[137] *Martin Energy Servs., LLC v. M/V BOURBON PETREL*, Nos. 14–2986, 15–79, 15–81, 2015 WL 2354217, at *7 (E.D.La. May 14, 2015) (Fallon, J.) (citing *Lake Charles Stevedores, Inc. v. PROFESSOR VLADIMIR POPOV MV*, 199 F.3d 220, 229 (5th Cir.1999)).

[138] Rec. Doc. 38 at 1.

[139] *New America Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1081 (Fed. Cir. 1989); *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843–44 (11th Cir. 1989); *American Nurses Association v. State of Illinois*, 783 F.2d 716, 729 (7th Cir. 1986); *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th Cir. 1985); *United States of America, acting Through the Small Business Association v. Light*, 766 F.2d 394, 397 (8th Cir. 1985). Federal Rule of Civil Procedure 56(f) was recodified without substantial change in the 2010 amendments as Federal Rule of Civil Procedure 56(d).

[140] *Paul Kadair, Inc. v. Sony Corp. of America*, 694 F.2d 1017, 1029–30 (5th Cir. 1983). *See Fisher v. Metropolitan Life Insurance Co.*, 895 F.2d 1073 (5th Cir. 1990) and *Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir. 1989).

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it
> cannot present facts essential to justify its opposition, the court may:
>> (1) defer considering the motion or deny it;
>> (2) allow time to obtain affidavits or declarations or to take discovery; or
>> (3) issue any other appropriate order.[141]

The protection afforded by Rule 56(d) is an alternative to a response in opposition to summary judgment under Rule 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment.[142] To obtain a Rule 56(d) continuance, the nonmovant must present specific facts explaining his inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."[143] The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts.[144]

Plaintiff here did not file an affidavit or declaration. The Fifth Circuit has observed that "[w]hile a party's failure to comply with Rule 56(d) procedure does not preclude consideration of the motion, some equivalent statement, preferably in writing ... is to be expected."[145] Assuming, that Plaintiff's request for additional discovery in its memorandum constituted a request for a Rule 56(d) continuance, the Court finds that Rule 56(d) may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate "how the additional

---

[141] Federal Rule of Civil Procedure 56(d).

[142] 10A Wright, Miller, and Kane, *Federal Practice and Procedure* § 2740 (1983).

[143] *Securities and Exchange Commission v. Spence & Green Chemical Co.,* 612 F.2d 896, 901 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981) (quoting *Willmar Poultry Co. v. Morton–Norwich Products, Inc.,* 520 F.2d 289, 297 (8th Cir.1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976)).

[144] *Gossett v. Du–Ra–Kel Corp.,* 569 F.2d 869, 873 (5th Cir.1978).

[145] *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

time will enable him to rebut the movant's allegations of no genuine issue of fact."[146] Plaintiff's casual reference to the existence of outstanding discovery falls short of showing how additional time would enable it to meet its burden in opposing summary judgment. As such, the Court rejects Plaintiff's argument and will consider Defendant's motion.

### B.    *Collateral Estoppel*

Defendant argues that collateral estoppel precludes Plaintiff from challenging the validity and enforceability of the liens in this litigation.[147] Defendant contends that Plaintiff repeatedly acknowledged the validity of the maritime liens during the Work Cat bankruptcy proceeding, and thus, collateral estoppel is applicable.[148] In opposition, Plaintiff argues that there has been no disposition as to the issues presented in this lawsuit.[149]

"Collateral estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"[150] Collateral estoppel precludes a party from litigating an issue if: (1) the same parties were involved in a prior action; (2) the issue at stake is identical to the one involved in the prior action; (3) the issue was actually

---

[146] *Weir v. Anaconda Co.,* 773 F.2d 1073, 1083 (10th Cir. 1985) (quoting *Patty Precision v. Brown & Sharpe Mfr. Co.,* 742 F.2d 1260, 1264 (10th Cir. 1984)). In *Pasternak v. Lear Petroleum Exploration, Inc.,* 790 F.2d 828, 833 (10th Cir. 1986),

[147] Rec. Doc. 33-2 at 16.

[148] *Id.* at 16–19.

[149] Rec. Doc. 38 at 24–25.

[150] *Schiro v. Farley,* 510 U.S. 222, 232, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)); *see also* Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim.").

litigated in the prior action; and (4) the determination of the issue in the prior action was a necessary part of the judgment.[151]

While both Plaintiff and Defendant were involved in the prior bankruptcy proceeding, the issue presented here was not actually litigated in the bankruptcy proceeding. Defendant attaches a Motion for Relief from Automatic Stay filed by Plaintiff,[152] the hearing transcript,[153] and the final order[154] rendered in the United States Bankruptcy Court in the Middle District of Florida – Tampa Division. A review of the transcript shows that the instant maritime liens were referenced during the bankruptcy hearing, but the validity of said liens were not litigated or at issue. In the bankruptcy proceeding, at issue was Plaintiff's request for modification of the automatic stay to allow Plaintiff to take immediate possession of the barges. Plaintiff references the maritime liens on the barges in its motion. However, the order granting Plaintiff's requested relief does not reference the maritime liens nor does it render a final disposition as to the validity of the maritime liens. For these reasons, the Court finds that the application of the collateral estoppel doctrine would be inappropriate here.

## C.    *Statutory Maritime Lien*

The CIMLA governs entitlement to maritime liens.[155] It states, in relevant part, that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the

---

[151] *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 572 (5th Cir. 2005).

[152] Rec. Doc. 33-7.

[153] Rec. Doc. 33-6.

[154] Rec. Doc. 33-8.

[155] *ING Bank N.V. v. Bomin Bunker Oil Corp.*, 953 F.3d 390, 393 (5th Cir. 2020) (quoting *Valero Mktg. & Supply Co. v. M/V Almi Sun, IMO No. 9579535*, 893 F.3d 290, 292 (5th Cir. 2018)).

owner ... has a maritime lien on the vessel [and] may bring a civil action in rem to enforce the lien."[156] The lien "is a special property right in the vessel," which "grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds."[157] Under the CIMLA, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner (1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel.[158]

### 1. Whether Defendant Provided "Necessaries" for the Vessels

While not defining "necessaries," the CIMLA furnishes an illustrative list: "repairs, supplies, towage, and the use of a dry dock or marine railway."[159] In that regard, "[n]ecessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged."[160] The term, which has a "broad meaning,"[161] includes "most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function."[162] These are items useful "to vessel operations"[163] and "necessary to keep the ship going."[164]

---

[156] 46 U.S.C. § 31342(a)(1), (2).

[157] *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986) (en banc) (citation omitted).

[158] 46 U.S.C. § 31342(a).

[159] 46 U.S.C. § 31301(4).

[160] *Equilease*, 793 F.2d at 603 (citing 2 Benedict on Admiralty § 34 (7th ed. 1984)).

[161] *J. Ray McDermott & Co. v. Off-Shore Menhaden Co.*, 262 F.2d 523, 525 (5th Cir. 1959).

[162] *Id.*

[163] *Gulf Marine & Indus. Supplies, Inc. v. Golden Prince M/V*, 230 F.3d 178, 180 (5th Cir.

Plaintiff argues that the towage services were not provided *for* the barges, nor did the barges benefit from the towage services. Plaintiff asserts that Defendant has failed to produce any evidence to establish that the barges requested towage, or that it was necessary for the barges to be towed to effectuate their function – to stay afloat.[165] Plaintiff argues that the barges received no use or benefit from the towage services.[166] Plaintiff contends that it did not receive a "direct" benefit from Defendant's services.[167]

The instant matter is akin to *Arc Controls, Inc. v. M/V Nor Goliath*.[168] In *Arc Controls*, tugboat companies provided towage services to barges in conjunction with a decommissioning project pursuant to a charter agreement. The tugboat companies later attempted to assert a maritime lien on the heavy-lift vessel. The trial court found that while the towing companies did not directly provide benefit to the heavy-lift vessel, the *barges* did directly benefit from the towage services provided by the tugboats. The court reasoned that "the material barges could not have provided goods and services to the vessel without the towing services provided to the material barges by the tugboats."[169]

---

2000) (discussing *Equilease*); *see also Silver Star Enterprises, Inc. v. Saramacca M/V*, 82 F.3d 666, 668 (5th Cir. 1996) (maritime liens "developed as a necessary incident of the operation of vessels") (quoting *Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co.*, 245 U.S. 1, 9, 38 S.Ct. 1, 62 L.Ed. 113 (1920)).

[164] *Silver Star Enterprises, Inc. v. Saramacca M/V*, 82 F.3d 666, 668 (5th Cir. 1996) (quoting *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.*, 310 U.S. 268, 280, 60 S.Ct. 937, 84 L.Ed. 1197 (1940)).

[165] Rec. Doc. 38 at 12.

[166] *Id.*

[167] *Id.* at 13.

[168] No. 1:19CV391-LG-RPM, 2021 WL 1971485, at *3 (S.D. Miss. May 17, 2021), *amended on reconsideration*, No. 1:19CV391-LG-RPM, 2021 WL 2931426 (S.D. Miss. July 12, 2021), and *aff'd sub nom. Cent. Boat Rentals, Inc. v. M/V Nor Goliath*, 31 F.4th 320 (5th Cir. 2022).

[169] *Id.* at *3.

There is no dispute that Defendant's tugboats provided towage to the barges owned by Plaintiff. As stated above, towage falls within the CIMLA's illustrative list of "necessaries." The barges were chartered to Work Cat, and Work Cat subsequently entered into a charter agreement with Defendant wherein the barges were used to provide liner services. Like *Arc Control,* the barges could not have provided the liner services without the towage provided by Defendant's tugboats. As such, the Court finds that Defendant did provide necessaries for the vessels.

## 2. Fuel Costs

Defendant argues that it is also entitled to the cost of fuel consumed by its tugboats in connection with the towage services. In opposition, Plaintiff argues that the barges do not consume fuel, and thus, Defendant does not have a maritime lien for fuel costs. Fuel may qualify as a "necessary" to a vessel under the CIMLA when it is supplied to refuel that vessel.[170] In such a case, fuel could be akin to "repairs, supplies, [or] towage,"[171] like those things, the fuel would be "necessary to keep the ship going."[172]

It is undisputed that the fuel consumed by Defendant's tugboats in connection with the underlying towage services was supplied by a non-party corporation. As such, Defendant did not furnish the fuel to Plaintiff's barges. Furthermore, the fuel was not consumed by the barges as barges do not require fuel. As stated above, fuel may qualify as a "necessary" to a vessel under

---

[170] *See, e.g.*, *Valero Marketing & Supple Co. v. M/V Almi Sun*, 893 F.3d 290 at 291–94 (there was "no dispute that [fuel] bunkers qualify as necessaries ... to the Vessel" when plaintiff supplied fuel to a vessel that "needed refueling").

[171] 46 U.S.C. § 31301(4).

[172] *Silver Star Enterprises, Inc. v. Saramacca M/V*, 82 F.3d 666, 668 (5th Cir. 1996) (quoting *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.*, 310 U.S. 268, 280, 60 S.Ct. 937, 84 L.Ed. 1197 (1940)).

the CIMLA when it is supplied to refuel that vessel.[173] For these reasons, the Court finds that Defendant is not entitled to fuel costs.

### 3.    Whether Defendant Relied on the Credit of the Vessel

If the burden is carried that goods or services qualifying for a lien were furnished to a vessel, Section 31342(a)(3) creates a presumption of reliance on the credit of the vessel, and there is no need to allege or prove this fact.[174] The party opposing the lien rather has the burden of negating this by establishing that the personal credit of the owner or charterer was solely relied upon.[175] To meet this burden, evidence must be submitted that the supplier of goods or services purposefully intended to forego the lien.[176]

As stated above, the Court finds that Defendant did furnish towage services to the vessels which were "necessaries." Thus, a presumption exists that Defendant relied on the credit of the vessel. Plaintiff, as the party opposing the lien, has the burden of negating this presumption. In support of its argument that Defendant did not rely on the credit of the barges, Plaintiff contends that Defendant's corporate representative testified that Defendant did not extend any credit to the barges[177] and that every invoice prepared by Defendant was addressed to Work Cat.[178]

---

[173] *See, e.g., Valero*, 893 F.3d at 291–94 (there was "no dispute that [fuel] bunkers qualify as necessaries ... to the Vessel" when plaintiff supplied fuel to a vessel that "needed refueling").

[174] Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 9:3 Liens for "necessaries": the Commercial Instruments and Maritime Liens Act (2023).

[175] *TTT Stevedores of Texas, Inc. v. M/V Jagat Vijeta*, 696 F.2d 1135 (5th Cir. 1983).

[176] *Maritrend, Inc. v. Serac & Co. (Shipping). Ltd*, 348 F.3d 469 (5th Cir. 2003).

[177] Rec. Doc. 38 at 18.

[178] *Id.* at 19.

The fact that Defendant invoiced Work Cat for the towage services is insufficient to establish that Defendant relied solely on the credit of the barge. The Fifth Circuit has found that "invoicing the charterer is not dispositive because it only shows that a party attempted to receive payment from the charterer first, not that it never intended to rely on the credit of the vessel."[179]

Defendant's corporate representative testified that Defendant did not work for the credit of the barge.[180] However, prior to answering in the affirmative, Defendant's corporate representative stated that he did not understand the question.[181]

> Q: [Defendant] didn't extend any credit to the [Plaintiff's] barges, did it?
> …
> A: I don't really understand the question.
> Q: You didn't work on the credit of the barge, did you?
> …
> A: Work on the credit? I still don't understand your question.
> Q: Did you work on the credit of the barge? Like, you didn't work for the barge; you work for Work Cat, right?
> …
> A: Yeah. I think I answered that.[182]

While the Fifth Circuit has found that "[a]lmost nothing is more conclusive"[183] than testimony of a corporate representative on the issue of reliance, it is unclear whether the corporate representative understood the question presented. To "rely on the credit of a vessel" is legal terminology that may not be fully grasped by a lay person. As such, the Court is reluctant to

---

[179] *Maritrend, Inc,* 348 F.3d at 475 (5th Cir. 2003) (citing *Gulf Trading & Transp. Co. v. Vessel Hoegh Shield*, 658 F.2d 363 (5th Cir. 1981)).

[180] Rec. Doc. 38-2 at 34.

[181] Rec. Doc. 39-1 at 43.

[182] *Id.*

[183] *Racal Survey U.S.A, Inc. v. M/V COUNT FLEET*, 231 F.3d 183 at 190 (5th Cir. 2000).

accept the testimony as evidence that Defendant intended to forego the lien. For these reasons, the Court finds that genuine issues of material fact remain as to this issue.

### V. Conclusion

For the reasons stated herein, the Court finds that genuine issues of material fact remain as to whether Defendant relied on the credit of the vessels. As such, summary judgment on the validity of the instant maritime liens is inappropriate. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment[184] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this __12th__ day of June, 2024.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[184] Rec. Doc. 33.